UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARK GRUTTADAURIA,

                        Petitioner,          MEMORANDUM & ORDER
                                             09-CV-4258(JS)
            -against-

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                        Respondent.
----------------------------------X
APPEARANCES
For Petitioner:      Mark Gruttadauria, pro se
                     04-A-2184
                     Attica Correctional Facility
                     P.O. Box 149
                     Attica, NY 14011

For Respondent:      Michael Herman Blakey, Esq.
                     Suffolk County District Attorney's Office
                     Criminal Court Building
                     200 Center Drive
                     Riverhead, NY 11901

SEYBERT, District Judge:

            Pro se petitioner Mark Gruttadauria ("Petitioner")

petitions this Court for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. For the following reasons, the Petition is DENIED.

BACKGROUND

            Petitioner was convicted on February 2, 2004 in the

County Court of the State of New York, Suffolk County upon a jury

verdict finding him guilty of three counts of Burglary in the

Second Degree, N.Y. PENAL LAW § 140.25, one count of Attempted

Burglary in the Second Degree, N.Y. PENAL LAW § 110,140.25, and one

count of Resisting Arrest, N.Y. PENAL LAW § 205.30. (Pet. ¶¶ 4, 6;

Return ¶ 93 [Docket Entry 11]; Feb. 2, 2004 Trial Tr. at 26-27).[1]

On February 24, 2004, Petitioner filed a pro se motion to set aside

the verdict pursuant to N.Y. CRIM. PROC. LAW § 330.30 ("330.30

Motion"), which was denied on April 6, 2004. People v.

Gruttaduria, No. 599A-03 (Suff. Cnty. Ct. Apr. 6, 2004) (Hinrichs,

J.) ("Gruttadauria I"). Petitioner's 330.30 Motion alleged that:

(1) he was denied the right to effective assistance of counsel and

to representation by an attorney of his choice; (2) his request for

a Mapp hearing was improperly denied and as a result his confession

was introduced at trial; (3) the jury selection was unfair; (4) the

prosecution introduced evidence that was obtained from an illegal

search and seizure; (5) the prosecution coerced its witnesses to

provide testimony against Petitioner; (6) his request for a change

of venue was improperly denied; and (7) he was denied a pre-trial

psychiatric examination. (330.30 Motion; Return ¶ 94). The People

opposed the motion and Petitioner's trial counsel, Steven Wilutis,

Esq., submitted an affirmation in opposition to the 330.30 Motion.

(Return ¶ 94).

The trial court denied the 330.30 Motion on April 6,

2004, finding that counsel's performance was "far from being

---

[1] Petitioner was acquitted of two additional counts of Burglary
in the Second Degree, N.Y. PENAL LAW § 140.25. (Return ¶ 93).

ineffective" and "was completely competent." See Gruttadauria I.

Judge Hinrichs explained that counsel's "representation was primarily responsible for defendant's acquittal on two counts of Burglary in the Second Degree at the instant trial notwithstanding significant evidence, including an admission by the defendant, relative to those two counts." (Id. at 1.) Judge Hinrichs further found that Petitioner "did not receive merely adequate representation, but rather an aggressive and compelling defense by a talented, experienced attorney." (Id. at 2.) According to Judge Hinrichs, counsel "made a cogent opening statement, throughly and effectively cross examined all witnesses, and delivered a compelling closing argument on defendant's behalf." (Id. at 1.) Thus, the court concluded that, when "[v]iewed in totality, defense counsel provided meaningful representation." (Id.) Judge Hinrichs also found that Petitioner's other contentions lacked merit. Specifically, the court ruled that the search warrant was "clearly supported by probable cause" given that it was "based in part on statements of co-defendant Denise Bisconti (who testified at trial to committing several of the subject burglaries with defendant)." (Id. at 2.) The court also determined that Petitioner "actively participated in jury selection" and that "none of the witnesses admitted to being coerced by the prosecutor." (Id.) Further, the court rejected Petitioner's contention that his statements to law

enforcement were involuntary, finding that Petitioner's arguments were repetitive "of arguments already cogently made by [counsel and rejected by the court] at the Huntley hearing . . . ." (Id.) Moreover, the court concluded that Petitioner's "belated attempt to dismiss Mr. Wilutis on the day of, and during, trial was merely an attempted delay tactic and [Petitioner's requests for new counsel were] properly denied . . . ." (Id.) Finally, the court found that Petitioner "did not make a motion for a change of venue prior to trial" and even if he had, "[t]here was no basis on which to grant a change of venue had such a motion been made" given the fact that "every juror was asked during voir dire whether they had any knowledge about the case from any source whatsoever and each juror that fully participated in the selection process said they had none." (Id.)

Also on April 6, 2004, Petitioner was sentenced as a second violent felony offender to an aggregate term of imprisonment of thirty years with five years of post-release supervision. (Pet. ¶¶ 2-3; Return ¶ 98; Apr. 6, 2004 Sentencing Tr. at 60-61; see also People v. Gruttadauria, No. 599A-2003 (Suff. Cnty. Ct. Sept. 25, 2007) ("Gruttadauria II").

Petitioner, represented by appellate counsel Mark Diamond, Esq. ("Diamond"), appealed the denial of the 330.30

Motion[2] and, on May 15, 2007, the Appellate Division, Second Department determined that the County Court improperly considered the affirmation submitted by Mr. Wilutis because the affirmation included references to matters "dehors the record." People v. Gruttadauria, 40 A.D.3d 879-880, 836 N.Y.S.2d 272 (2d Dep't 2007). Since the County Court, Suffolk County, "in denying the [330.30] motion, referred to both the record and defense counsel's explanations based upon material dehors the record" the Appellate Division held the direct appeal in abeyance and remitted the matter to the County Court, Suffolk County for a de novo determination of the Petitioner's motion to set aside the verdict. Id. The Appellate Division further instructed that Petitioner be represented in that matter by the same appellate counsel, Diamond, who represented him on the appeal. Id.

In accordance with the Appellate Division's directive, Diamond filed a second 330.30 motion (the "Second 330.30 Motion") and, on September 25, 2007, it was denied without a hearing. Gruttadauria II. The court rejected the eleven instances of alleged ineffectiveness of trial counsel cited by Petitioner. Id. at 2. Three of Petitioner's claims of ineffective assistance of counsel were raised pursuant to N.Y. CRIM. PROC. LAW § 330.30(2) and

_____

[2] Petitioner also submitted a pro se supplemental brief dated July 29, 2005 to the Appellate Division, Second Department.

alleged that, out of the presence of the court, there were improprieties relating to the jury selection process and alleged juror misconduct. <u>Id.</u> Specifically, Petitioner contended that: (1) trial counsel failed to consult with him during jury selection; (2) trial counsel should have challenged certain jurors; and (3) trial counsel did nothing when Petitioner reported to him that a friend of Petitioner had told Petitioner during the trial that the friend had seen the prosecutor's husband coaching a witness in the hall. <u>Id.</u> The court, in denying this prong of the Second 330.30 Motion found that "none of the allegations . . . [relating to the jury selection and/or juror misconduct] represent either 'improper conduct by a juror, nor improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict.'" <u>Id.</u> (quoting <u>People v. Owens</u>, 191 A.D.2d 715, 716, 595 N.Y.S.2d 518 (2d Dep't 1993)). The court explained that "'[t]o object successfully to a juror's misconduct after a verdict, a defendant is required to demonstrate that the objectionable conduct was not known to him before the verdict and that it would not have been disclosed by a proper inquiry before the jury was sworn.'" <u>Id.</u> (quoting <u>Owens</u>, 191 A.D.2d at 716, 595 N.Y.S.2d at 518). Because the court found that Petitioner had not raised any issue of fact with regard to either "improper juror

conduct, or improper conduct by another person in relation to a juror" or that "each of these claims [was] not known to him before the verdict," this prong of Petitioner's Second 330.30 Motion to set aside the verdict was denied without a hearing.  <u>Gruttadauria II</u> at 2.

The court also denied the balance of the Second 330.30 Motion, which was brought pursuant to N.Y. CRIM. PROC. LAW § 330.30 (1).[3]  Insofar as Petitioner claimed that the search warrants were unsigned, the court found such claim to lack merit.  Indeed, the court found that the warrants at issue were signed by a district court judge and noted that "[t]he Assistant District Attorney clearly stated on the record at trial that, although defense counsel was provided with unsigned 'courtesy' photocopies of the warrants, signed copies of the search warrants were in the Court file."  <u>Id.</u> at 2.  Further, the court found Petitioner's remaining

_____

[3] N.Y. CRIM. PROC. LAW § 330.30(1) provides that:

> At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:
>
> 1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

arguments that his trial counsel was ineffective "unavailing" with the possible exception of counsel's decision to ask a complaining witness, Donald Gleason, on cross-examination if he could identify the person who had attempted to burglarize his home after the People had not asked this question of him during his direct examination.[4] Id. at 3. While acknowledging "that a single error _may_ constitute ineffective assistance of counsel, this is true only where the error is of such magnitude as to deprive defendant of a fair trial", id. at 3 (emphasis in original), the court then analyzed "'whether this single error, . . . was sufficiently prejudicial to compromise the defendant's right to a fair trial.'" Id. at 3 (quoting People v. Rivera, 71 N.Y.2d 705, 530 N.Y.S.2d 52, 525 N.E.2d 698 (1988); People v. Georgiou, 38 A.D.3d 155, 828 N.Y.S.2d 541 (2d Dep't 2007)). The court explained:

> [E]ven if this Court were to conclude that this was an error on Mr. Wilutis' part, the Court would find this error standing alone did not render counsel's performance, as a whole, ineffective. Rather, this question to Mr. Gleason, at worst, 'was but one mistake in otherwise entirely competent representation.'
>
> In short, none of defendant's claims, considered either collectively or separately,

---

[4] Mr. Gleason so identified Petitioner. (Jan. 21, 2004 Trial Tr. at 81).

8

> establish ineffectiveness of trial
> counsel.
>
> . . .
>
> Despite overwhelming evidence of
> defendant's guilt, including
> confessions, proceeds of burglaries
> and the testimony of the co-
> defendant at trial, defense counsel
> obtained acquittals on two burglary
> counts.

Gruttadauria II at 3-4 (quoting Georgiou, 38 A.D.3d at 160, 828

N.Y.S.2d at 545). Accordingly, the court ruled that Petitioner

"received meaningful representation at trial" and denied the Second

330.30 Motion in its entirety. Gruttadauria II at 4.

Following the denial of the Second 330.30 Motion,

Petitioner, still represented by Diamond, supplemented his original

brief to the Appellate Division, Second Department, and the People

filed a supplemental response brief. Petitioner's appeal of his

judgment of conviction and supplement thereto raised the following

grounds: (1) Petitioner's statements to police should have been

suppressed because they were coerced and made without capacity,

rendering them unknowing and involuntary; (2) Petitioner's

statements to police should have been suppressed because they were

taken in violation of Petitioner's Miranda[5] rights; (3) Petitioner

was improperly sentenced as a second violent felony offender; (4)

---

[5] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

the trial court erred by denying both 330.30 Motions to set aside the verdict; (5) the conviction on the first count of Burglary in the Second Degree was against the weight of the evidence and was unsupported by legally sufficient evidence; (6) the procedures employed by the police in conducting a line-up identification were improper and the identification of Petitioner thus was tainted; (7) Petitioner was denied his right to counsel of his choice at trial; and (8) the trial court denied Petitioner's right to be present at all material stages of trial by refusing to conduct side-bar conferences unless Petitioner waived his right to be present. (Pet. ¶¶ 8-9; Appellant's Brief to the Appellate Division, Second Department, dated July 25, 2005 and Appellant's Supplemental Brief dated October 5, 2007).

On December 18, 2007, the Appellate Division, Second Department, affirmed the judgment of conviction in its entirety. People v. Gruttadauria, 46 A.D.3d 837, 848 N.Y.S.2d 280 (2d Dep't 2007). Petitioner, pro se and through counsel, sought leave to appeal to the New York State Court of Appeals and such leave was denied on April 11, 2008. People v. Gruttadauria, 10 N.Y.3d 840, 859 N.Y.S.2d 399, 889 N.E.2d 86 (2008).

On September 18, 2009, Petitioner filed the instant Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (See Docket Entry 1; see also Addendum to the

Petition at Docket Entry 1-2 ("Pet. Addendum")).  In response to
the Court's October 9, 2009 Order to Show Cause, the District
Attorney of Suffolk County, as attorney for Respondent, filed a
Return to the Petition.  (Docket Entry 11).   On April 15, 2010,
Petitioner filed a "Traverse" in response to the Return.  (Docket
Entry 17).   For the reasons set forth below, the Petition is
DENIED.

DISCUSSION

I.   <u>Standard of Review</u>

          Under the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA"), a federal court may grant a writ of habeas
corpus to a state prisoner when prior state adjudication of the
prisoner's case: (1) "resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States; or (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-
(2).  A state court decision is contrary to clearly established
federal law if it "applies a rule that contradicts the governing
law set forth in [Supreme Court] cases, or if it confronts a set of
facts that is materially indistinguishable from a decision of [the
Supreme] Court but reaches a different result."  <u>Brown v. Payton</u>,

544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005). "A state-court decision involves an unreasonable application of [the Supreme] Court's clearly established precedents if the state court applies [them] to the facts in an objectively unreasonable manner." Id. Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Yarborough v. Alvarado, 541 U.S. 652, 660–61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (internal quotation marks and citation omitted).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, --- U.S. ----, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (internal quotation marks and citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (citation omitted) ("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . If this standard is difficult to meet, that is because it was meant to be."). With these standards in mind, the

Court considers the Petition.

II. <u>The Petition</u>

Petitioner seeks federal habeas relief on the following grounds: (1) the judgment of conviction was based upon legally insufficient evidence and was against the weight of the evidence; (2) he was denied his choice of counsel; (3) the identification procedures employed by the police were improper; (4) Petitioner's statements to police were made in violation of his Fifth Amendment and <u>Miranda</u> rights; (5) he was denied his right to be present at all material stages when the trial court refused to hold side bar conferences unless Petitioner waived his right to be present; (6) he was denied the effective assistance of counsel; and (7) he was improperly sentenced as a second violent felony offender. Pet. ¶ 12(a)-(g); Pet. Addendum at 2-3). Each of these grounds was previously presented to the state court on direct appeal and there are no other petitions or appeals pending challenging the judgment that is the subject of the instant Petition. For the reasons that follow, habeas relief is DENIED.

A. <u>Exhaustion</u>

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. 28 U.S.C. § 2254(b)(1)(A); <u>see</u> <u>also</u> <u>Cullen v. Pinholster</u>, --- U.S. ----, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011) ("Section 2254(b)

requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); Jones v. Murphy, 694 F.3d 225, 246-47 (2d Cir. 2012), cert. denied, 133 S. Ct. 1247, 185 L. Ed. 2d 192 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review."). "'Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights,'" Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011), cert. denied, --- U.S. ----, 132 S. Ct. 265, 181 L. Ed. 2d 155 (2011)), i.e., the "petitioner must 'present [] his [or her] claim to the highest court of the state." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (alterations in original) (quoting Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000)). A state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims. Lawrence v. Florida, 549 U.S. 327, 333, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007).

Here, Petitioner has presented the grounds for habeas relief set forth in his Petition to the Appellate Division and to the Court of Appeals of New York. Thus, his claims have been exhausted and are properly before this Court.

B.  Weight of the Evidence/Sufficiency of the Evidence Claim

Petitioner claims that his conviction on count one of the indictment of Burglary in the Second Degree (N.Y. PENAL LAW § 140.25) was against the weight of the evidence and was supported by insufficient evidence of guilt.  (Pet. ¶ 12(a); Pet. Addendum at 2).  As a threshold matter, Petitioner's claim that the jury's verdict of guilt was against the weight of the evidence does not present a claim cognizable on federal habeas review.  See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Scission v. Lempke, 784 F. Supp. 2d 237, 243 (W.D.N.Y. 2011) ("A 'weight of the evidence' argument is a pure state law claim grounded in the criminal procedure statute." (quoting People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987)); see also Villafane v. Artus, No. 09-CV-5545, 2011 WL 6835029, *50 (E.D.N.Y. Nov. 17, 2011) (citing McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 72-73 (2d Cir. 2011)).  Accordingly, Petitioner's claim that his conviction was against the weight of the evidence is DENIED.

15

However, a sufficiency of the evidence claim may be reviewed by a habeas court.  See, e.g., Perez v. Smith, 791 F. Supp. 2d 291, 303 (E.D.N.Y. 2011) ("[U]nlike a sufficiency of the evidence claim--which at least is dually grounded in federal due process principles--a weight of the evidence claim is a creature of state law." (citing CRIM. PROC. LAW § 470.15(5))); Scission, 784 F. Supp. 2d at 243 (stating that "a legal insufficiency claim is based on federal due process principles" and is thus cognizable in a federal habeas proceeding).

It is well-established that "[e]vidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, --- U.S. ----, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32 (2012) (per curiam) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was objectively unreasonable.'" Parker, 132 S. Ct. at 2152 (quoting Cavazos v. Smith, 565 U.S. ----, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (per curiam)).  The Supreme Court has cautioned district courts that "'it is the responsibility of the jury--not the court--to decide what conclusions should be drawn

from evidence admitted at trial.'" <u>Parker</u>, 132 S. Ct. at 2152 (quoting <u>Cavazos</u>, 132 S. Ct. at 4).

Here, Petitioner acknowledges that, on October 11, 2002, a burglary occurred at the home of Janet Brown at 53 Blue Point Avenue in Sayville, New York, but claims that "there simply was no real evidence that Petitioner committed that burglary" apart from Petitioner's statement to the police. (Pet. Addendum at 2-3.) In the absence of any evidence to corroborate Petitioner's statement, Petitioner claims that it was error for his attorney to neglect to request, and for the trial court not to include, a circumstantial evidence charge to the jury. (<u>Id.</u> at 3.) However, Petitioner's claim is belied by the uncontroverted trial testimony. Janet Brown testified that on October 11, 2002, her home was broken into and personal property, including a knife in an unusual leather sheath, a medal, an 18-karat gold compact mirror case, a Cartier watch, a Movado watch and some boxed sets of coins and silver dollars, were taken. (Jan. 20, 2004 Trial Tr. 50-52, 54-55, 79.) She testified that she saw some of these same items again at the Fifth Precinct in March 2003 (<u>Id.</u> at 59.) Detective Walker executed a search warrant at Petitioner's apartment and found a knife in an unusual leather sheath and a watch. (1/21/04 Tr. 757-758.) Detective Michael Soto testified that Petitioner confessed to the burglary at 53 Bluepoint Avenue and Petitioner explained that he gained entry

through the rear of the house. (Jan. 27, 2004 Trial Tr. 943-44, 946.) Petitioner's signed statement was read into the record at trial. (Jan. 21, 2004 Trial Tr. 964-66, People's Ex. 21.) Petitioner's statement provided, in part, that "toward the end of 2002, I started doing house burglaries to get money and jewelry to make ends meet. . . . I almost always kicked in the rear door, sometimes the front. . . . The locations that I burglarized [included] [i]n the Hamlet of Blue Point, 53 Blue Point Avenue." (Jan. 21, 2004 Trial Tr. 964-65.)

Petitioner's confession and possession of unique items matching the described burglary proceeds more than established proof beyond a reasonable doubt. Notwithstanding Petitioner's characterization of the evidence as "circumstantial" such characterization is belied by his confession to this burglary together with the fact that some of the stolen property was found in his possession. Given that Petitioner's confession was corroborated, the Court finds that there was sufficient evidence to convict Petitioner on count one of the indictment. Petitioner provided voluntary and detailed confessions of his burglaries, including the one at 53 Blue Point Avenue. Though Petitioner argues that it is theoretically possible that someone else burglarized 53 Bluepoint Avenue and then sold or gave the proceeds to Petitioner, the Court finds this incredible claim to be purely

speculative and hardly provides reasonable doubt.  Accordingly,
this prong of Petitioner's habeas petition is DENIED.

      C.   <u>Denial of Petitioner's Choice of Counsel Claim</u>

      Petitioner claims that he was deprived of his Sixth
Amendment right to counsel because the trial court denied his
request for a different attorney at trial.  According to
Petitioner, he "expressed his dissatisfaction with his assigned
attorney, and sought assignment of a different attorney through the
18-B system." (Pet. ¶ 12(b); Pet. Addendum at 4.)  Petitioner also
claims to have requested an adjournment of his trial so as to
afford him an opportunity to retain private counsel with the
financial assistance of his family. (Pet. Addendum at 4-5.)  The
trial court denied Petitioner's requests and this determination was
affirmed on appeal.  <u>Gruttaduria</u>, 46 A.D.3d at 837, 848 N.Y.S.2d at
280.  Petitioner now contends that he was "denied his
Constitutional Right to his choice of counsel . . . ." (Pet.
Addendum at 4.)  As this ground was decided on the merits in state
court, it is entitled to AEDPA deference. 28 U.S.C. § 2254(d).

      Upon review of the record, the Court finds that the trial
court's decision not to delay trial was not contrary to, or an
unreasonable application of, federal law.  It is well-established
that a defendant's choice of counsel may sometimes yield to "the
demands of [the trial court's] calendar" and its power "to make

scheduling . . . decisions." <u>United States v. Gonzalez-Lopez</u>, 548

U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). A

defendant "does not have the unfettered right to retain new

counsel," <u>United States v. Brumer</u>, 528 F.3d 157, 160 (2d Cir.

2008), and the trial court's desire to avoid delaying a criminal

proceeding is generally a valid reason to deny a defendant's

request to substitute counsel. <u>Id.</u> at 161. Moreover, "the right

to counsel of choice does not extend to defendants who require

counsel to be appointed for them." <u>Gonzalez-Lopez</u>, 548 U.S. at 151

(citation omitted); <u>see</u> <u>also</u> <u>United States v. Walsh</u>, 712 F.3d 119,

123 (2d Cir. 2013).

Here, Petitioner has not demonstrated that the trial

court's denial of his request to change counsel warrants habeas

relief. Petitioner was represented by four attorneys during his

prosecution and by a fifth attorney--Mark Diamond, Esq.--on his

post-trial motion practice and appeal.[6]    Though Petitioner

---

[6] The record reflects that Petitioner was represented by five
different attorneys during the course of his prosecution. Charles
W. Manning, Esq. was appointed by Hon. C. Randall Hinrichs
pursuant to Article 18-b of the County Law. <u>See</u> Notice of
Appearance filed by Charles W. Manning, Esq., dated March 18,
2003. Petitioner then retained Steven Fondulis, Esq., who filed
a Notice of Appearance dated April 9, 2003. Subsequently, Steven
J. Wilutis, Esq. was appointed to represent Petitioner and Mr.
Wilutis filed his Notice of Appearance on November 10, 2003.
William Nash, Esq. represented Petitioner on April 6, 2004 at the
hearing to determine Petitioner's status as a prior violent
felony offender and sentencing. Finally, Petitioner was
represented by Mark Diamond, Esq. on direct appeal and on the
Second 330.30 pursuant to the Appellate Division's May 15, 2007
order. <u>See</u> <u>Gruttadauria</u>, 40 A.D.3d at 879, 836 N.Y.S.2d at 272.

generally claims to have had a conflict of interest with assigned trial counsel, Petitioner has provided no support for such claim. Thus, the trial court's decision to refuse Petitioner's eleventh hour request to change counsel was not unreasonable, and habeas relief on this point is DENIED.

   D.   <u>Claim that the Identification Procedures Employed by the Police were Improper</u>

        Petitioner claims that the use of a photo array for identification purposes was improper in that it was overly suggestive and that a line-up should have been done instead. (Pet. Addendum at 6.) Petitioner's trial counsel raised this issue at a pre-trial <u>Wade</u> hearing[7] and Judge Hinrichs denied Petitioner's application to suppress the photo array. (Jan. 14, 2004 Hr'g Tr. 26.) In denying the suppression motion, Judge Hinrichs explained that:

              In reviewing People's Exhibit No. 1
              and the six individuals in the
              photo, they all appear to be similar
              in general appearance. And number
              six, the defendant, is not
              highlighted in any fashion and does
              not stand out from any other
              individual.

_____

[7] "'The purpose of a <u>Wade</u> hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification.'" <u>Lynn v. Bliden</u>, 443 F.3d 238 (2d Cir. 2006) (alteration in original) (quoting <u>Twitty v. Smith</u>, 614 F.2d 325, 333 (2d Cir. 1979)).

(Id.)  Judge Hinrichs further found that the photo array was not suggestive given that there was language provided to the witness together with the photo array that explained that "[t]he fact that the photos are shown to you should not influence your judgment in any way.  You should not conclude nor guess that the photographs contain the picture of the person who committed the crime."  (Id. at 27.)

As a threshold matter, Respondent contends that this claim was not presented to the state court on direct appeal and is thus procedurally barred from federal habeas review.  (Respondent's Br. at 5 [Docket Entry 11-2]).  Although Petitioner was represented by counsel, Mark Diamond, Esq., on his direct appeal and Second 330.30 Motion, counsel did not challenge the identification procedures utilized to identify Petitioner, including the photo array.  However, Petitioner also submitted a "Pro Se Supplemental Brief on Appeal" to the Appellate Division, Second Department. There, Petitioner claimed that the identification procedures employed by the police were tainted in that the witness had been informed that an arrest had been made prior to his viewing the photo array.  (Pro Se Supp. Br. on Appeal, July 29, 2005 at 7). The Appellate Division expressly stated that Petitioner's "contentions, including those raised in his supplemental pro se brief, are without merit."  Gruttadauria, 46 A.D.3d at 838, 848

N.Y.S.2d at 281 (emphasis added).  Thus, Petitioner's present claim that the photo array was a suggestive identification was before and decided by the state court.  Thus, the state court's decision on this ground is entitled to AEDPA deference. 28 U.S.C. § 2254(d).

It is well-established that the use of a photo array is not per se suggestive.  Watkins v. Sowders, 449 U.S. 341, 101 S. Ct. 654, 66 L. Ed. 2d 549 (1981); Dunlap v. Burge, 583 F.3d 160 (2d Cir. 2009).  "It is clearly established federal law that an identification procedure may be unduly or unnecessarily suggestive if it created 'a very substantial likelihood of irreparable misidentification.'"  McKinnon, 422 F. App'x at 75 (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)).  So long as the pre-trial identification procedure was not "unnecessarily suggestive" or if the "identification is independently reliable" the identification evidence is generally admissible.  Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009). Here, given Petitioner's confession, together with the trial testimony of a co-defendant, Denise Bisconti, who pleaded guilty to one count of Attempted Burglary in the Second Degree and testified against Petitioner[8], and the in-court identification of Petitioner

---

[8] Bisconti testified that she began "burglarizing homes" with Petitioner in January 2003 and that her role in these crimes was to be the "look-out."  (Jan. 26, 2004 Trial Tr. 613.)

by Donald Gleason, the Court is more than satisfied that the identification of Petitioner is independently reliable. Accordingly, there is no due process violation and this prong of the Petition is DENIED.

   E.    Claim that Petitioner's Statements to Police were made
         in Violation of his Fifth Amendment and Miranda Rights

         Petitioner contends that his confession was involuntarily coerced after he was brutally beaten by the arresting police officers. Petitioner also argues that because the trial court found that his initial statements to police were unknowing and involuntary, his subsequent statements should have also been excluded under the "fruit of the poisonous tree" doctrine.

         A pretrial Huntley[9] hearing was held concerning the admissibility of Petitioner's statements to the police and Judge Hinrichs determined that some of the questioning by police of Petitioner was prior to the administration of the Miranda warnings. (Jan. 14, 2004 Hr'g Tr. 31-32.) The court further found however that "there was a pronounced break in questioning" and following that break Petitioner signed and initialed the Miranda warnings card. Thus, from that point on, the court determined that

---

[9] "A Huntley hearing is a pre-trial proceeding to determine the admissibility of a confession." Acosta v. Artuz, 575 F.3d 177, 187 n.3 (2d Cir. 2009); see also People v. Huntley, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 843, 204 N.E.2d 179, 183 (1965).

Petitioner had "made a knowing, voluntary and intelligent waiver of his rights." (<u>Id.</u> at 32.) The court specifically ruled, "tak[ing] into account the totality of the circumstances," that Petitioner "made a knowing, voluntary and intelligent waiver of his rights in conjunction with the preparation of the written statement, and that it was subsequently signed by the defendant, Mark Gruttadauria, signed and sworn to." (<u>Id.</u> at 33.)

Further, the court credited the accounts of the police witnesses concerning the manner in which Petitioner sustained physical injuries during the course of his arrest. Finding that "there was not any force used in the questioning of Mr. Gruttadauria, but rather it was reasonable force under the circumstances necessary to place the defendant under arrest and in custody . . . " (<u>id.</u> at 34), the court made a "factual finding that [the statements which the court has suppressed based on the Miranda violation] were voluntarily made" (<u>id.</u> at 36).

On direct appeal, Petitioner presented these arguments to the Appellate Division, Second Department, which, like the hearing court, rejected Petitioner's claims and affirmed the hearing court in its entirety. <u>Gruttadauria</u>, 46 A.D.3d at 838, 848 N.Y.S.2d at 281-82 ("The hearing court properly determined that the defendant's statements, which were admitted into evidence at the trial were made after the defendant knowingly, intelligently, and voluntarily

waived his Miranda rights . . . after a definite and pronounced break in the interrogation sufficient to remove any taint from the initial statements made by the defendant to the police without the benefit of Miranda warnings . . . ." (citations omitted)). As this ground was decided on the merits in state court, it is entitled to AEDPA deference. 28 U.S.C. § 2254(d).

However, the voluntariness of a confession is "'a legal question requiring independent federal determination.'" Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 287, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). Notwithstanding a federal district court's obligation to make an independent determination of voluntariness, findings of fact underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Nelson, 121 F.3d at 833-34. Petitioner bears the burden of rebutting those determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001). Accordingly, if the material facts were not adequately developed by the state court, or the state court's factual determination is not fairly supported by the record, the district court may set aside the presumption of correctness. Nelson, 121 F.3d at 833. When evaluating the voluntariness of a confession, the Court must analyze the totality of the circumstances. Id.;

<u>Green v. Scully</u>, 850 F.2d 894, 901 (2d Cir. 1988).

Here, the hearing court found, <u>inter alia</u>, that although some of the questioning of Petitioner by police was prior to the administration of the <u>Miranda</u> warnings, a "pronounced break" in questioning occurred and that following the break Petitioner signed and initialed the <u>Miranda</u> warnings card. Thus, from that point on Petitioner had made a knowing, voluntary, and intelligent waiver of his rights. The court further concluded that there was no evidence of coercion or force used in connection with the taking of Petitioner's statement. Rather, the court determined that to the extent force was used against Petitioner, it was reasonable under the circumstances to place Petitioner under arrest and was unrelated to the subsequent confession given by Petitioner. Such determinations were affirmed on appeal. <u>Gruttadauria</u>, 46 A.D.3d at 837, 848 N.Y.S.2d at 280.

Petitioner has not demonstrated that the material facts were inadequately developed at the state court hearing or that the record does not fairly support the court's factual determinations. In the absence of such a showing, this Court presumes the correctness of the state court's findings of fact with respect to the circumstances of Petitioner's interrogation and the voluntariness of his waiver of his Miranda rights. <u>See</u> <u>Nelson</u>, 121 F.3d at 833. Moreover, "[u]nder the Supreme Court's holding in

_Oregon v. Elstad_, 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222

(1985), it does not follow that these later [Mirandized] statements

must be suppressed as 'fruit' of the original Miranda violation.'"

_Tankleff v. Senkowski_, 135 F.3d 235, 244 (2d Cir. 1998) (quoting

_Elstad_, 470 U.S. at 309, 105 S. Ct. 1285, 84 L. Ed. 2d 222).

Indeed, "[i]t is an unwarranted extension of Miranda to hold that

a simple failure to administer the warnings, unaccompanied by any

actual coercion or other circumstances calculated to undermine the

suspect's ability to exercise his free will, so taints the

investigatory process that a subsequent voluntary and informed

waiver is ineffective for some indeterminate period." _Elstad_, 470

U.S. at 309, 105 S. Ct. 1285, 84 L. Ed. 2d 222.

Based on the totality of the circumstances presented

here, the state courts' determination that Petitioner's challenged

statements were admissible was a reasonable application of federal

law.  _See_ 28 U.S.C. § 2254(d).  Therefore, this ground of the

Petition lacks merit and is DENIED.

> F.   Claim that Petitioner was Denied his Right to
>      be Present at All Material Stages when the Trial
>      Court Refused to Hold Side Bar Conferences
>      Unless Petitioner Waived his Right to be Present

Petitioner alleges that he was compelled to surrender one

constitutional right to secure another when the trial court refused

to conduct any sidebar conferences unless Petitioner waived his

28

right to be present, thereby denying Petitioner the right to be present at all material stages of prosecution. Petitioner also claims that the trial court's ruling in this regard was delivered in a coercive and threatening manner.

According to the trial transcript, prior to jury selection, trial counsel reported to the Court that Petitioner declined to sign an <u>Antommarchi</u>[10] waiver and that Petitioner wished to be present at "all of the parts of the trial, including sidebar discussions with jurors and the rest of the items that are on the Antom[m]archi waiver." (Jan. 14, 2004 Hr'g Tr. at 57.) Judge Hinrichs then stated:

> That's certainly the defendant's right and we will act accordingly. At this stage it would apply to the interviews with the jurors. It will all be done in such a fashion that Mr. Gruttadauria hears the entire exchange. We will make appropriate arrangements with the Court personnel to accomplish that fact.

<u>Id.</u> On January 20, 2004, Judge Hinrichs recounted that Petitioner was presented with an <u>Antommarchi</u> waiver that he refused to sign.

---

[10] <u>People v. Antommarchi</u>, 80 N.Y.2d 247, 250, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992), established that a defendant has a right to be present during any material stage of the trial, including any side-bar discussions with prospective jurors relating to the jurors' ability to "weigh the evidence objectively."

(Jan. 20, 2004 Trial Tr. at 3.) Judge Hinrichs explained that a defendant's presence is not required when a proceeding or issue involves only questions of law or procedure.  (Id. at 3 (citing People v. Rodriguez, 85 N.Y.2d 586, 627 N.Y.S.2d 292, 650 N.E.2d 1293 (1995); People v. Wood, 259 A.D.2d 777, 686 N.Y.S.2d 879 (3d Dep't 1999)).)  Accordingly, Judge Hinrichs ruled:

> [T]he court will be very mindful of the Defendant's failure, and in that he did not want to sign the waiver. So anything at all that would involve any factual matter about which the defendant might have peculiar knowledge, or would be useful in advancing his own position or countering the People's position, will be done in the presence of all concerned and the jury will be excused.
>
> If the argument, however, is just a purely legal argument and legal argument, only, based upon the law I just cited, it would be the Court's intention to confer with counsel and counsel, only, at sidebar.

(Jan. 20, 2004 Trial Tr. at 4.)  Judge Hinrichs then asked defense counsel if he wished to be heard further on this issue and Mr. Wilutis stated that he did not. (Id. at 5.)  Petitioner presented this claim on his direct appeal in his Supplemental Pro Se Brief and it was determined to lack merit.  Gruttadauria, 46 A.D.3d at 838, 848 N.Y.S.2d at 282 ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, are

without merit."). Because this ground was decided on the merits in state court, it too is entitled to AEDPA deference. 28 U.S.C. § 2254(d).

A criminal defendant's right to be present at trial is rooted in the Confrontation Clause of the Sixth Amendment which guarantees a defendant the right to be present at trial to confront the witnesses and evidence against him. U.S. v. Tureseo, 566 F.3d 77, 83 (2d Cir. 2009) (citing United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)); see also Grayton v. Ercole, 691 F.3d 165, 170 (2d Cir. 2012). "[T]his right to be present has been extended to other critical stages of trial beyond those related to the defendant's rights to confronting witnesses and evidence." Tureseo, 566 F.3d at 83. A defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Id. (internal quotation marks and citation omitted); see also Faretta v. California, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (stating that a criminal defendant "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings"); United States v. Rivera, 22 F.3d 430, 438 (2d Cir. 1994) ("Due Process requires that a defendant be present at all stages of the trial to the extent

that a fair and just hearing would be thwarted by his absence.") (internal quotation marks and citation omitted)).

Notably absent from the Petition is any claim of prejudice as a result of Petitioner's exclusion from sidebar conferences nor is there any reason to conclude that Petitioner's presence at the sidebar conferences would have had any "reasonably substantial" relation to his opportunity to defend against the charges. See Wilson v. Bennett, 188 F. Supp. 2d 347, 356 (S.D.N.Y. 2001). Consequently, Petitioner's absence at the sidebar conferences did not substantially affect his ability to defend his case. See Gaiter v. Lord, 917 F. Supp. 145, 152 (E.D.N.Y. 1996) (concluding that petitioner's presence at sidebar was not required because it would not have had a substantial effect on her ability to defend). Moreover, as was made clear by Judge Hinrichs, he did not conduct sidebar conferences for non-legal arguments. (Jan. 20, 2004 Trial Tr. at 3-4; see also Jan. 15, 2004 Jury Selection Tr. at 26.) During voir dire, Judge Hinrichs explained that he would like to speak to those people who did not want to openly discuss their personal affairs in private. "When I say 'privately', it's not exactly private: It would be in the presence of myself and the attorneys and Mr. Gruttadrauria." (Jan. 15, 2004 Jury Voir Dire Tr. at 26.) Thus, insofar as Petitioner complains that there were no sidebar conferences held during trial, he clearly misunderstands

what transpired at trial.  Petitioner's claim is belied by the record and is meritless.  The Appellate Division's rejection of Petitioner's right to be present claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Petitioner's right to be present claim is DENIED.

  G. <u>Denial of the Effective Assistance of Counsel Claim</u>

   Petitioner contends that the trial court erred in denying his post-conviction motion to set aside the verdict based upon the ineffective assistance of counsel.  More specifically, Petitioner claims that counsel was ineffective prior to and during trial in that he: (1) neglected to confer with Petitioner regarding possible defenses or plea offers; (2) failed to request a <u>Mapp</u> hearing or challenge the validity of a search warrant; (3) declined to introduce evidence of the "brutal beating" inflicted on Petitioner at the time of his arrest; and (4) failed to interview medical witnesses including the doctors and nurses who treated Petitioner at the time he made incriminatory statements.  (Pet. at ¶ 12(f); Pet. Addendum at 12-13).  Petitioner's ineffective assistance of counsel claim was raised on direct appeal and rejected by the Appellate Division in its entirety.  <u>Gruttadauria</u>, 46 A.D.3d at 838, 848 N.Y.S.2d at 282.  Given the Appellate Division's decision

on the merits, this Court applies the deferential AEDPA standard of review to Petitioner's claim.[11]  See, e.g., Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by [AEDPA]. . . .").

Under the Sixth Amendment, a criminal defendant has "the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The Supreme Court recently restated that, "[i]n Strickland, we held that legal representation violates the Sixth Amendment if it falls 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms,' and the defendant suffers prejudice as a result.  Chaidez v. U.S.,

---

[11] An "adjudication on the merits" is one that (1) disposes of the claim on substantive grounds, and (2) reduces that disposition to judgment. Eze v. Senkowski, 321 F.3d 110, 122 (2d Cir. 2003).  Moreover, "[a]n issue may be considered to be adjudicated on its merits 'even when the state court does not specifically mention the claim but uses general language referable to the merits'", id. (quoting Norde v. Keane, 294 F. 3d 401, 410 (2d Cir. 2002)), as is the case here, Gruttadauria, 46 A.D.3d at 838, 848 N.Y.S.2d at 282 ("On the face of the record, it appears that the defendant was afforded meaningful representation.").

--- U.S. ----, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013) (quoting Strickland, 466 U.S. at 687–688). Petitioner must satisfy both prongs of the Strickland test to be entitled to relief. Strickland, 466 U.S. at 687–688. However, in Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011), the Supreme Court clarified the standard for assessing ineffective assistance of counsel claims when § 2254(d)'s deference applies. There, the Supreme Court noted that, under § 2254(d), "the question is not whether counsel's actions were reasonable" under the familiar Strickland standard for judging ineffective assistance of counsel. Harrington, 131 S. Ct. at 788. Instead, the "question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (also noting that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so" (internal quotation marks and citation omitted)). Thus, to prevail on his ineffective assistance of counsel claim here, Petitioner must show, in addition to Strickland's requirements noted above, that there is no "reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788. Petitioner has failed to do so.

Petitioner offers no evidence or argument that the outcome of his trial would have been different but for his

counsel's purported "errors." (Pet. Addendum at 12-13.) Nor does the Court find any in its independent review of the record. To the contrary, among other things, trial counsel succeeded in having Petitioner acquitted of two additional felony counts of Burglary in the Second Degree despite Petitioner's admissions to the police that he committed those crimes. Additionally, trial counsel sought to suppress Petitioner's confession at the pre-trial <u>Huntley</u> hearing and achieved limited success in this regard. (Jan. 8, 2004 Hr'g Tr. 3-118; Jan. 9, 2004 Hr'g Tr. 48-160; Jan. 12, 2004 Hr'g Tr. 42-190; Jan. 14, 2004 Hr'g Tr. 28-33.) He also vigorously challenged the photo array used for identification purposes at the pre-trial <u>Wade</u> hearing. (Jan. 8, 2004 Hr'g Tr. 31-114; Jan. 14, 2004 Hr'g Tr. 22-24.) The record makes clear that trial counsel actively participated in <u>voir</u> <u>dire</u> of potential jurors (Jan. 15, 2004 Jury Selection Tr. 17, 27, 33, 42, 48, 50, 94-134, 140-141); delivered compelling opening and closing arguments (Jan. 20, 2004 Trial Tr. 38-44; Jan. 30, 2004 Trial Tr. 7-54); and conducted able cross-examination of the People's witnesses.[12]

---

[12] <u>See</u> Counsel's cross-examination of the following witnesses: Janet Brown: Trial Tr. 61-94; Michael Kotula: Trial Tr. 32-40; Donald Gleason: Trial Tr. 62-81; Brian McGuire: Trial Tr. 105-135; Florence Svendsen: Trial Tr. 146-153; Paul Giunta: Trial Tr. 178-186; Alice DeMatteo: Trial Tr. 212-227, 232-233; Kathryn Wolf: Trial Tr. 276-284; William Maldanado: Trial Tr. 306-324; Margaret Schrage: Trial Tr. 361-395; James Smith: Trial Tr. 477-530; Edward Reilly: Trial Tr. 557-588; Denise Bisconti: Trial Tr. 640-685; Jeffrey Rubin: Trial Tr. 701-709; Anthony Piazza: Trial Tr. 725-738; James Walker: Trial Tr. 759-794; Michael Milau: Trial Tr. 851-910; Michael Soto: Trial Tr. 967-1046, 1059-1093; William Rathjen: Trial Tr. 1121-1128).

Given this record, there is simply no evidence that Petitioner's trial counsel was constitutionally deficient. Moreover, Petitioner has not established the second prong of the Strickland test, namely that he was prejudiced by counsel's purportedly deficient performance. Rather, as the Appellate Division concluded, trial counsel succeeded in having Petitioner "acquitted . . . of two counts of burglary in the second degree despite the defendant's admissions to the police that he committed those burglaries." Gruttadauria, 46 A.D.3d at 838, 848 N.Y.S.2d at 209). Thus, a reasonable argument exists that Petitioner's trial counsel satisfied Strickland's deferential standard. Accordingly, this prong of the Petition is DENIED.

H.    Claim that Petitioner was Improperly Sentenced
      as a "Second Violent Felony Offender"

Petitioner claims that he was improperly adjudicated as a "second violent felony offender" because the prosecution did not prove the existence of Petitioner's prior felony conviction beyond a reasonable doubt. (Pet. ¶ 12(g); Pet. Addendum at 19-20). Petitioner claims that his 1997 felony burglary conviction was the result of a coerced confession and that the trial court erred in relying on that conviction to sentence him as a second violent felony offender. (Pet. Addendum at 19-20). This claim is noncognizable on habeas review.

State law governs whether a conviction may qualify as a predicate felony for sentencing purposes. See N.Y. PENAL LAW §§ 70.04, 70.06, 70.08. It is well-established that habeas review is not available for state law violations. See, e.g., Estelle v. McGuire, 502 U.S. 62, 63, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions."); Knapp v. Leonardo, 46 F.3d 170, 181 (2d Cir. 1995). The Second Circuit instructs that the determination of "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law . . . ." Saracina v. Artus, 452 F. App'x 44, 46 (2d Cir. 2011) ("[W]e have previously held that whether a foreign conviction can serve to enhance a New York State sentence is a question of state law not cognizable on federal habeas review" (citing United States ex rel. Dennis v. Murphy, 265 F.2d 57, 58 (2d Cir. 1959) (per curiam)); see also Gilbo v. Artus, No. 10-CV-0455, 2013 WL 160270, at *16 (N.D.N.Y. Jan. 15, 2013); Sudler v. Griffin, No. 12-CV-0367, 2013 WL 4519768, at *9 (N.D.N.Y. Aug. 26, 2013). Thus, habeas review of this state law claim is unavailable.

Moreover, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation

omitted); see also White v. Rock, No. 10-CV-5163, 2013 WL 1767784, at *22 (E.D.N.Y. Apr. 22, 2013); Parson v. Sup. of Fishkill Corr. Fac., No. 12-CV-2358, 2013 WL 1953181, at *2 (S.D.N.Y. May 13, 2013) (citing Santos v. Rock, No. 10-CV-2896, 2011 WL 3449595, at *9 n.11 (S.D.N.Y. Aug. 5, 2011)). Here, as noted above, Petitioner was convicted of three counts of Burglary in the Second Degree, N.Y. PENAL LAW § 140.25, one count of Attempted Burglary in the Second Degree, N.Y. PENAL LAW § 110, 140.25, and one count of Resisting Arrest, N.Y. PENAL LAW § 205.30 (Pet. ¶¶ 4; Return ¶ 93; Feb. 2, 2004 Trial Tr. at 26-27) for which he was sentenced to an aggregate term of imprisonment of thirty years with five years of post-release supervision. (Pet. ¶¶ 2-3; Return ¶ 98; Apr. 6, 2004 Sentencing Tr. at 60-61; Gruttadauria II. This sentence is well within the maximum sentence prescribed by the New York Penal Law for the crimes for which Petitioner was convicted. See N.Y. PENAL LAW § 140.25 (describing the offense of Burglary in the Second Degree as a class C felony); N.Y. PENAL LAW § 70.00(2)(c) (stating that the sentence for a class C felony is a term not to exceed fifteen years); N.Y. PENAL LAW §§ 110.0, 140.25(2) (describing the offense of Attempted Burglary in the Second Degree as a class D felony); N.Y. PENAL LAW § 70.00(2)(d) (stating that the sentence for a class D felony is a term not to exceed seven years); N.Y. PENAL LAW § 205.30 (describing the offense of Resisting Arrest as a class A

misdemeanor); N.Y. PENAL LAW § 70.15(1) (stating that the sentence for a class A misdemeanor shall not exceed one year). Accordingly, this claim is without merit. See Gonzalez v. Travis, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) (finding excessive sentence claim not cognizable for habeas review where sentence was within statutory range); Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (holding the trial court's imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law."); Thomas v. Senkowski, 968 F. Supp. 953, 956 (E.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. Middleton v. Att'ys Gen. of State of N.Y. and Penn., 396 F.3d 207, 209 (2d Cir. 2005); see also 28

U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").  The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September   30  , 2013
           Central Islip, NY